Please the court. My name is Bruce Cross. I represent United Parcel Service. I'd like to reserve five minutes if I could. This is an action to vacate a labor arbitration award. The district court affirmed the force the award and we appealed. Let me start my argument, if I can, by acknowledging or recognizing that this court gives great deference to decisions of arbitrators under collective bargaining agreements. But we think that this case comes within two of the three exceptions to that deference that you have recognized, one being that the arbitrator departed from the issue that the parties submitted to him. And secondly, he disregarded the plain language of the collective bargaining agreement. The underlying facts are not really in dispute, and we described them in some detail in our opening brief. But it's important to the court to have a grasp of the facts, to understand what the nature of the dispute is. United Parcel Service, of course, is the familiar package delivery service that you're all familiar with. The company historically used a lot of part-time employees, in addition to the familiar full-time men and women in brown who actually deliver the packages. These part-time people generally worked inside the company's facilities, handling packages, fueling, washing cars, that sort of thing, typically in the off hours. In, as I say, nationwide, the company utilized literally tens of thousands of part-time employees. In the parties' negotiations in 1997, the company agreed to create a number of new full-time positions by combining two part-time jobs and giving the two part-time jobs to one employee. For example, the company could take a part-time evening package handling job that one part-time person would do, combine it with a midnight, a nighttime car wash job that a different part-time employee was doing or would do, and combine them, give them to one employee. So we have one job composed of two part-time jobs that would otherwise have been done by two part-time employees. But we have a new full-time employee. But what is the advantage for the union? Because they get, like, coverage? The union had a really, really, they're all covered. These are all bargaining unit employees. The union in the 1997 negotiations had a strong push to create more full-time jobs. Do you know for what reason? No, I don't, Your Honor. But that was what they wanted to accomplish, and the company agreed to do that. All right. These new combined jobs were referred to in a variety of different ways. In our stipulation for the district court, we referred to them as Article 22.3-40, referring to the provision of the collective bargaining agreement. That's quite a mouthful, so I'll just refer to them as 22.3 employees. Now, these folks, as I say, are full-time employees, have their own wage rates, full-time benefits, but they're still doing the work. The question is what happens when they go on vacation or sick leave or something like that. Exactly right. And the question then is, was the company required to automatically call in extra workers to replace them, or could the company simply decide that we didn't need to have extra workers for these two jobs on that particular day? And that's the district court. The company's position was that you can use people already working, and the union's is you have to get them from the extra list. That's exactly right. Well, I've been looking at the two framings of the question, one by you and one by the union, and then the arbitrator's reframing. Now, what do you object to in the arbitrator's reframing? I do not, Your Honor. We do not object to the arbitrator's phrasing of the issue. It's kind of an awkward phrasing, but we think it captured the party's dispute. Our objection is that the arbitrator did not decide that issue. Instead he did decide that you couldn't use the employees already working, right, that you had to get somebody from the extra list, whether it's one or two. He did decide that they come from the extra list, right? That's correct, Your Honor. And that was proper. I'm sorry? That was a proper decision. I mean, you don't agree with the outcome, but it was he had the authority. That was the issue you put to him. That's right. If he had decided that issue, we would still have the argument that he disregarded the plain language of the collective bargaining agreement, but we would not have had the argument, that's our opening argument, that he did not decide that. Our argument is that if you read the issue you put to him, though. That's right. Okay. We did put that issue to him. I don't think our argument is that he did not decide that, Your Honor. You're saying that he decided that you have to call two instead of one from the extra list. That's right. Okay. Now, that's decided. The other way around. One instead of two. One instead of two from the extra list. Is it clear that that's what the arbitrator decided? I think it is. I think if you read his entire decision, as you must, it's clear that he decided the one-person versus two-persons issue and not the issue that the parties presented  When it comes to his conclusion, he doesn't do that. But in the body here he says, The record does not support a conclusion that there was any intent of the union to allow or permit the employer to use two part-time employees from the extra work sign-up list in seniority order to fill a vacancy created during the vacation, holiday, or absence in full-time Article 22-340 combination jobs. But then he never really comes back to that. And he seems to be saying, being neutral about it in his subsequent comments. And in the conclusion, he clearly doesn't say anything about that. He does come back to it, Your Honor. If you read on a little bit further in that passage, you'll see the two paragraphs after the one that you just read. The record confirms that the job of the absent 22.3-40 employee is being performed in its entirety, and the employer cannot reasonably contend otherwise. Two part-time employees would not have been requested and assigned to perform the job and work required if this were not the case. So he's still on the one-person versus two-person issue. And then he says, I wasn't quite sure what to make of that. And then a little bit further down on actually the next page of his decision, he says, the language does not permit the employer to fill such absences or vacancies by two part-time employers. What page are you on? I'm on Excerpt of Record 545. Okay. And it's page 10, I believe, of his decision. Yeah, I got it. Yeah, that's where I read to you at first. That was what I read, which was it does not permit. That's the one place where I thought that. That doesn't say whether it's two part-time employees who are already working, which was the issue. I think it does, Your Honor, because the passage I just read, he said, two part-time employees would not have been requested and assigned to perform the work as requested. You have a call from the extra work sign up list. Let me ask maybe a dense question, but, you know, unlike Judge Reinhardt, I never had anything to do with labor law. What is a company's objective? I mean, just flexibility and management. Is that what it amounts to? Or is there something more? Yes. The records or the facts in arbitration were that the company, there are no minimum staffing manning requirements in the contract. The company does not automatically replace any other absent employee. If a driver is absent and the work can be redistributed to the remaining drivers, the company doesn't have to call in an extra one. So it's a flexibility. The other objection the company had was that if we call in somebody from the extra work sign up list, that person's already worked a part-time shift that day. So then you'd be holding them over to work another part-time shift, and at least some of that time would be at overtime rates. So we'd be paying people overtime for work that, one, we didn't think we'd need anybody at all for. So the company took the position that it was entitled to determine staffing levels, and if it didn't need an extra person, it didn't have to bring one in. There was no dispute over if the company decided that they wanted to bring somebody in, where that person would come from. That person had come from the extra work sign up list. But we think if you read the arbitrator's decision as a whole, the conclusion that we come to is that he did not decide the issue that was submitted to him. He decided the one-person, two-person issue. And it's our view is this is not a case where the arbitrator's decision was merely ambiguous or where he issued a summary award. Judge Reinhart, as you observed in the Garvey case, that an arbitrator does not have an obligation to explain his reasoning. If it's merely ambiguous, it's enforced. But you went on to say when an arbitrator does give reasons for a decision, we must accept those reasons as the basis of the award. You otherwise would undermine the system of deference that governs our method of review. I didn't do too well with that case. Well, ultimately not. But the Court, the Supreme Court did not disagree with these statements of principles. They disagreed with the way you applied them in that case. I don't know what it disagreed with, but that's the point. But you went on to say that. He was a good first baseman anyway. Absolutely. But you went on to say that your conclusion there was accepting the arbitrator's reasons as the basis for the award, basis of the award, leads us inexorably to the conclusion that in reaching his decision, the arbitrator dispensed his own brand of industrial justice. No, that's what I thought. Now, that, you know, your phrasing of that, I think, is really, you know, originates with Justice Douglas' statement in the Enterprise Wheel and Car case, where he said that when an arbitrator is confined to the interpretation and application of the collective bargaining agreement, he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. And then Justice Douglas went on, in hardly a full of labor arbitrations, went on to say when the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. And that's what we believe we have here. The Hawaiian Teamsters decision, after the Garvey decision, affirmed Judge Reinhart's statement of the applicable principles. So the statement of the principles, I think, are valid,  So, you know, our argument is that the arbitrator departed from the issue. And not only did he do that, our second argument is that he, his decision that the company had to use one rather than two, clearly, part-time employees from the extraordinary sign-up was clearly contravenes the party's agreement. The party's, there's no dispute at all, but that both the company and the union believe that the, when the company does call someone in, they call two different people from the part-time list. They do not have to bring one. So the arbitrator's remedy itself is improper. And as this Court stated in the Phoenix newspaper case, a remedy, and I quote here, a remedy must still draw its essence from, and is therefore limited by, the collective bargaining agreement. So even in the, where my sense of our jurisprudence is that courts tend to grant even greater deference to an arbitrator's remedy. But nevertheless, the remedy is, is subject to the confines of the collective bargaining agreement. The third argument that we have, we've phrased it as two separate arguments, but it's really different aspects of the same. And that is, in assuming that the arbitrator did decide the issue that the party submitted to him, his decision ignores the plain language of the collective bargaining agreement. The plain language, the collective bargaining agreement says coverage for these kinds of absences shall be done. And our argument is that coverage has a plain meaning. The term of art that's used in the collective bargaining agreement and union's principal witness at the arbitration hearing agreed that coverage was not mandatory as used elsewhere in the contract. And our argument is that coverage has an established term and the arbitrator did not have the authority to, to ignore it. The district court said, well, of course he could. He can interpret contract language any way he wants. And I believe that's an overly extreme statement of the issue. If you had a collective bargaining agreement, for example, that said the employer can use two people to operate a particular piece of equipment, the arbitrator says, well, I think two means three. He does not have that authority. And that's the United Marcus case where the contract said that if the employer violated it on two occasions, the employer would no longer have the right to use this for classification. The arbitrator did not found the two violations, awarded only partial back pay, and this Court overturned on the basis that no longer was plain, had a plain meaning. Contracts are interpreted into ordinary meaning unless there's some indication otherwise, and the arbitrator did not have authority to, to interpret that language otherwise. We believe that's, that's the, we have here, the situation we have here as well. The arbitrator's final quoting of the language where he truncates it and eliminates the reference to coverage, we believe is just another, another way to look at it to demonstrate that he did in fact ignore coverage. He was talking about vacancies instead of coverage, and we do not think that he had the authority to do that. Thank you. Good morning. My name is David DeLue, and I am here on behalf of Teamsters Local 174, here to request that the Court affirm the District Court's decision. We're not here, we're not going to break any new legal ground today. This is an area where the law is well settled, and the outcome of this case really rests on the limited scope of review of an arbitration award. Now, when the material was presented to the arbitrator, did you have any back and forth about whether it should be one or two? The issue on the one or two gets into a bit of the minutia of the merits of the case because we've talked about part of the case. Can you answer my question yes or no? Well, yes and no, because it did it in a different way. The part-time employees that we talked about, the 10,000 or so, back in 1997 there was a nationwide strike because the union wanted more full-time jobs so people could earn a living wage. So what they did is they appended two part-time jobs together. We understand all that. But the issue then, as we pointed out in our opening statement to the arbitrator in our closing brief, is if they are not going to follow the contract and replace these 22.3 employees with people from the extra work list, then they're going to be using two part-time employees, one on each shift, to do that work, and they did not come from the extra work list. And so that's the way of saying yes and no. It does get into sort of the confusing aspect of the merits, and that's why we put it in front of the arbitrator for his interpretation of what does this all mean. Well, you didn't say it in your initial question to the arbitrator. No. The initial question to the arbitrator was whether the company violated the language of the contract. The issue that the company had in front of the arbitrator was they viewed the term coverage to mean leveling off, which is on any given day they could decide, well, how many people do we need? And even if we're missing a 22.3 person, can we just go ahead and get the work done without them? Well, I understand that's half of the issue. But the issue is to whether when they go to this seniority part-time list, they have to pick one person for the full time. It seems to me there could be people who were qualified to wash cars but not qualified to sort mail. And there would be times when the person who was the senior most might already be working on that shift and by definition would not be available. It's sort of, you know, worst case, that one statement in isolation from the arbitrator viewing the decision as the whole, he decided, did the company violate this provision? The company focused on that one language. And it's frankly, in a sense, what the company themselves did. They've come before this court saying, well, the arbitrator ignored an agreement of the parties. Well, at the district court level, the company told the district court that the agreement between the parties was that the company could use two part-time employees. Here they say, well, the agreement was they can use two part-time employees from the extra work sign-up list. Two very different things that ---- And do you interpret the arbitrator's award as going beyond saying they have to take the employee to fill in or employees from the extra list? Not going beyond that, no. You don't think it resolves the question of whether they have to take one or two? I don't. And so I think in terms of ---- I don't know, you know, this is an odd case because what the company is complaining about is something that you say the award doesn't even do. Well, I think what it doesn't do ---- I should back up and get to the point where it gets confusing in that it's two people if they're just part-time employees. What they're required to do is get people from the extra work sign-up list. Yes. Now, how many people that will be will depend on who has seniority, who's working already on that shift, who's qualified, those type of things. Well, it could depend on a lot of things, but that issue wasn't in dispute in this arbitration, was it? Correct. It was not. And that's not what the arbitrator's award deals with. It is not. He makes a comment in trying to address, I think, the union's argument in terms of, look, if you're not going to use people from the extra work list, who's going to be doing the work?  Because by definition, we are talking about work that spans two different shifts. Do you care whether the company takes one or two people from the extra list? I think there will be times when they have to. So, no, I don't care. No, no. What? They'll have to do what? They'll have to take two people off the extra work list because the senior-most person might be on a shift, and that's when they need somebody. What this arbitration was originally about, as the company says, is whether you violate, and you say you violate the contract, if you don't go to the extra list when somebody needs coverage or a vacation or whatever. And the arbitrator said, yes, you do have to go to the extra list. Correct. The issue was, what do we do when a 22.3 employees? The company says, no, he said you've got to take one instead of two from the extra list. And you're saying that's not what he said. I don't think that's what he said. I think they're grasping on one aspect of his attempt to explain the union's argument. Well, now, was the district court was wrong in saying that she thought the award read that they had to take a single person? I think the district court was simply affirming what the arbitrator said, given the limited scope of review. But that was not a question that was before the district court to determine. Under the standard, the scope of review, the issue before any court, district court, appellate court, is did the arbitrator arguably construe or interpret the collective bargaining agreement? Here, it's undisputed he did. In his conclusion, he says that Article I, Section 9, subparagraph F is clear and unambiguous, and the employer is not complying with it. And as a remedy, that those employees adversely affected should be made whole. Now, the company's claims that we had this agreement in terms of what coverage meant, well, there was no agreement on the record. As a matter of fact, I have to take it a little personally, because my opening statement addresses our dispute on the term coverage. My closing brief to the arbitrator addresses why we have a different view of the term coverage. So to the extent that there the district court was caught by, look, there's nothing that defines this supposed agreement that the arbitrator was supposed to enforce. And as Judge Reinhardt has pointed out, an arbitrator cannot misinterpret a collective bargaining agreement. This is not a situation, as Mr. Cross gave an example of, well, it says you can use two people, but I decide you should use three. Here, the question was, what does the word coverage mean? That was the company's entire defense. We get to decide when coverage is required. The union's argument is, no, the contract already defines when is coverage required. It's required whenever a 22.3 employee is absent, and that's when you fill in from the extra work sign-up list. I want to ask you, if the arbitrator's award were read the way you read it, not as the company reads it, and all the arbitrator said is when coverage is required, you must go to the extra list, and didn't say whether you can use one or two employees, is that a matter that you and the company could then resolve, or is that going to lead to another dispute? Well, actually, it's not on the record. It's an issue. There's since been another collective bargaining agreement, and the language of the issue has been changed. So we are talking about a closed time period. And from our view, that is what the arbitrator said. You know, an arbitrator, he's not an attorney. He was selected because of his knowledge of the shop and those type of things. It's clear when you read his decision from a whole. He sustained the union's grievance. He found that the language was clear, unequivocal, and the company was not complying with it. And if we get into his ---- What does it state here if this is over with? Is it a question of back wages for some people? There's a remedial issue that, yes, that would be who was not called in on the days that the company leveled off, as they call it. And so under the company's interpretation, they'd have to have remuneration for two shifts, two half shifts. Is that right? Correct. That there would have been, yeah, because the 22.3 position, by definition, covers two shifts. And what's your position on that? That if somebody, if the company did not call in somebody from an extra work list, let's say last Wednesday, that there would be two shifts that were not covered appropriately. And if there's a back pay issue, you'd look at who is the senior most qualified person that should have had that work. Would it be one person or could it be two? Well, it would be one person. It could be one person on both shifts. The other, that same person, though, might be working the second shift. That might be their regular part-time shift. So they go to the second senior qualified person on the extra work list. So. Since putting down a new contract, what turns on this case? Are there, like, back pay issues pending? Yes, there are. We think that, again, going back to basics, we can't, at the end, forget what we said at the beginning, that this is all about a limited scope or review. In a sense, it's like trying to review a high school football game. If you can show that the referee was cheated or was dishonest, that's one thing. But if you're just upset at the way the game was called, you have no legal remedy. And we think that's what's going on here. The company is upset, can't believe it's lost. The union thinks the arbitrator got it just right. He adopted every argument we made. If we were describing what the award did, in your view, you would have us say the award simply said that the company must go to the extra list. It can't use the currently working part-time employees. We would not say whether the award said you could fill in with one or two from the extra list. Right. Okay. Because that is what the arbitrator's conclusion was. That is his award. Yes. His fact findings and whether, worst case scenario, you call that what he had to say along the way as improvident or silly in terms of the MISCO court. But I think what was going on is the same way he's trying to deal with the various arguments and explain what they meant to him. But then he gave us his interpretation, and his interpretation was that it was clear and unambiguous and not being complied with. Thank you. So you can still have a dispute when you go back to compute that pay. Is that right? Yes, but that's not before the court. I understand that. But if we say nothing about whether you have one or two, you're going to be back to fighting about how much pay is due. Is that right? That's a question of the arbitrator-reserved jurisdiction for that remedial aspect. And so that, I think, properly in the collective bargaining agreement is where that question belongs. Thank you, counsel. Thank you. Your Honors, I have just one thing. One second. Okay. The clock's changed. I just have one thing I wanted to comment on. I think counsel misconstrued the arguments that we made before the district court. I think we made the same arguments in the district court as we're making here. If we were to decide this case, you would like us to say that the arbitrator held that you have to use two instead of one from the extra list? That's dealing with the remedy and the issue we think he decided. And, yes, we would want to ask the court to overturn that decision. No, no, listen. First, I'm just asking you, you would like us to say whether we overturn or uphold that he ordered that you use one or two? I keep forgetting. We think that. Now, how many from the extra list do you think he ordered? As I read his decision, he said we had to use the same person, one person, to cover both shifts. Okay. So that's what you would like us to say. No, that's what the arbitrator said. All right. When we say what the arbitrator said, we should say he ordered that you use one instead of two. I think that's what he said. Okay. That's what you want us to say. And if we uphold his award, you think we should say that his award is that you must use one instead of two? From the company's standpoint, we don't think that. From the law. Forget the company for a moment. If you affirm his award or enforce his award, I think all you need to do is do that. Do what? Just say that you enforce the award. Well, no. We've got to describe it, because otherwise we can't describe your arguments. I don't think. You'd like us to say the award is that he said you must not only go to the extra list, but you must use one instead of two. I think that's what he said, Your Honor. So, therefore, that's what we ought to say the award says if we affirm it. I think that's right. Okay. It's odd, because the union doesn't want us to say that. The company doesn't want it. It doesn't make any sense. No, it doesn't. Okay. I had nothing else to add, unless the Court had some other questions. Thank you. Thank you. The case, as argued, will be submitted. The Court will stand at recess for the day.
judges: Fletcher, Reinhardt, Tashima